## KANSAS CITY TITLE INS. CO. v. BUTLER et al.

### No. 10065.

Court of Civil Appeals of Texas. Austin.

Oct. 29, 1952.

Rehearing Denied Dec. 10, 1952.

Thompson, Walker, Smith & Shannon, F. B. Walker, Fort Worth, Critz, Kuykendall, Bauknight & Stevenson, F. L. Kuykendall, Austin, for appellant.

Price Daniel, Atty. Gen., W. V. Geppert, Asst. Atty. Gen., L. P. Lollar, Asst. Atty. Gen., for appellees.

ARCHER, Chief Justice.

Appellant, Kansas City Title Insurance Company, is a corporation, organized under the laws of the State of Missouri, and at all times pertinent hereto, was doing a title insurance business in Texas, under a proper certificate of authority issued by the Board of Insurance Commissioners of Texas.

This suit was instituted by appellant against the Board of Insurance Commissioners, and the members thereof in their official capacities and against Price Daniel, Attorney General of Texas, and Jesse James, State Treasurer, seeking to recover the sum of $71,892.01, plus accrued interest, which sum appellant had paid under protest.

A jury was waived, and on March 10, 1952, a take nothing judgment was rendered. On March 29, 1952, Findings of Fact and Conclusions of Law were filed.

The appeal is before us on four points assigned as error.

### Point No. One

The trial court erred in holding that appellant's abstract plant in Missouri is a similar security to "Texas securities," as defined in Article 7064, against which appellant must measure its securities located in Texas.

### Point No. Two

The trial court erred in holding that the $560,000 in capital stock owned by appellant in Title Building Company, a Texas corporation, was not property in Texas in which title insurance companies are authorized to invest their funds.

### Point No. Three

The trial court erred in holding the $560,000 of capital stock in Title Building Company, a Texas corporation, owned by appellant was not a "Texas security" within the definition of "Texas securities" as contained in Article 7064.

### Point No. Four

The trial court erred in failing and refusing to render judgment for appellant for a refund of the sum of $71,892.01, with interest, which sum it had paid under protest pursuant to demands by the Board of Insurance Commissioners of Texas.

It is conceded that the two law questions in this case are:

1. Is an abstract plant owned by appellant in Missouri a similar security to "Texas securities" as defined by Article 7064?

2. Is the $560,000 of capital stock in Title Building Company, a Texas corporation, a "Texas security" within the definition of "Texas securities" set out in Article 7064?

We believe that since an abstract plant is property of this State in which by law a title insurance company may invest its funds, Section 2 of Article 1302a, Vernon's Civ.St., and is a "Texas security" as the term is defined in Article 7064, V. C.S., that the abstract plant owned by appellant in Missouri is a similar security to Texas security, and should, therefore, be taken into account in the determination of appellant's right to have its tax rate calculated on 1% of the gross amount of premiums received by it upon property located in this State or on risks located in this State.

It is admitted that the appellant had invested in the State of Missouri on the preceding December 31st of each of the taxable years the sum of $500,000 in an abstract plant in that State, and that this sum was not in excess of 50% of its capital stock.

Article 7064, V.C.S., is long and we will not copy it in full herein, but will use such parts as may appear essential to an understanding thereof.

It provides, in part, that every insurance corporation—title—or any other kind or character of insurance business, other than the business of life insurance,—at the time of filing its annual statement, shall report

"to the Board of Insurance Commissioners the gross amount of premiums received upon property located in this State or on risks located in this State during the preceding year, and each of such insurance carriers shall pay an annual tax upon such gross premium receipts of three and five-tenths per cent (3.5%), * * *.

"Each such insurance organization shall also report to the Board of Insurance Commissioners on or before the first day of March of each year, the amount that it had invested on the 31st of December, preceding, in Texas securities as defined herein and the amount that it had invested on said date in similar securities in the state in which it had its highest percentage of admitted assets invested, * * *.

" * * * if the report shows such insurance organization had invested in such Texas securities on such date an amount which is in excess of ninety per cent (90%) of the amount that [he] had invested in similar securities in the state in which it then had the highest percentage of its admitted assets invested, its tax shall be one per cent (1%) of such gross premium receipts."

Since it is stipulated that the State of Missouri is the State in which appellant, Kansas City Title Insurance Company, had invested as of the preceding December 31st of each of the taxable years the highest percentage of its admitted assets, therefore, in order for the appellant to obtain the minimum taxable rate of 1% as provided in Article 7064, V.C.S., the taxing statute, it must have had invested, on the preceding December 31st of the taxable years, in Texas securities as defined in said Article, an amount in excess of 90% of the amount that it had invested in similar securities in the State of Missouri.

Texas securities, for the purposes of the Act, are defined to be—real estate, bonds, notes or bonds—cash deposits—bonds of the United States, or "in any other property in this State in which by law such insurance carriers may invest their funds."

Section 2, of Article 1302a, V.C.S., provides, in part, as follows:

"Any corporation organized hereunder having the right to do a title insurance business may invest as much as fifty (50%) per cent, of its capital stock in an abstract plant or plants, * * *."

We, therefore, are given a definition of Texas securities by the Act, and if an abstract plant is not ordinarily a security it is declared to be a security by the statute.

The greater the investment the appellant had in Texas in the securities as set out in the Act and less in similar securities in the State in which it had its highest percentage of admitted assets invested, as in the present case, Missouri, the greater its opportunities of attaining the minimum rate; and in contrast, the less it has invested in Texas securities and the more in similar securities in the State in which it has its highest percentage of its admitted assets invested, the greater is the possibility of such carrier becoming subject to the maximum rate, or a higher rate than 1%.

The Act has for its purpose to encourage by offering a lower tax rate those insurance carriers subject to the Act to make investments in Texas securities and property in this State. Board of Insur-

ance Commissioners v. Prudential Fire Insurance Company, Tex.Civ.App., 167 S.W. 578 (1942, error ref.).

It is not questioned but that if the Abstract Plant in Missouri carried on appellant's books at a value of $500,000 is a security, as the term is defined in Article 7064, that the appellant is subject to the higher rate of tax because the carrier did not have invested in Texas securities an amount in excess of 90% of the amount that it had invested in similar securities in the State of Missouri, and is therefore liable for the tax rate imposed of 3.5%.

Under the schedules of securities owned by the appellant in both the State of Missouri and in Texas, including the Title Building Company and stock in a Texas corporation, an investment not admitted by the appellees, the appellant still would not qualify for the 1% rate.

Appellant's Exhibit No. 7 shows what appellant contends is a proper comparison of the "Texas securities" with the securities in Missouri as of December 31, 1948, as follows:

|  | Missouri | Texas |
| --- | --- | --- |
| "Average Monthly Bank Balances | $256,857.21 | $ .00 |
| Stocks | 27,500.00 | 5,000.00 |
| U. S. Bonds | 175,000.00 | 175,000.00 |
| Municipal Bonds | 71,589.93 | .00 |
| Mortgage Loans Insured by F.H.A. | 6,991.93 | .00 |
| Investment in the Capital Stock of Title Building Company, a Texas Corporation | .00 | 560,000.00 |
| Totals | $537,939.07 | $740,000.00" |

Appellees' Exhibit No. 17 for 1948 shows what appellees contend is a proper comparison, as follows:

| "1948 | Missouri | Texas |
| --- | --- | --- |
| "Cash in Bank-Average | $ 256,857.21 | $ .00 |
| Stocks | 27,500.00 | 5,000.00 |
| U. S. Bonds | 175,000.00 | 175,000.00 |
| Municipal | 71,589.93 | .00 |
| Mortgage Loans FHA | 6,991.93 | .00 |
| Other | 82,702.75 | .00 |
| Abstract Plant | 500,000.00 | .00 |
|  | $1,120,641.82 | $180,000.00" |

Since we have decided that the Abstract Plant, owned by appellant in Missouri should be taken into account in the determination of appellant's right to have its tax rate calculated so as to be entitled to a tax rate of 1%, it is not necessary to pass on Points Nos. Two and Three, and we express no opinion thereon.

The judgment of the trial court is affirmed.

Affirmed.